1

2

3

4

5                           UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    **CENTER FOR FOOD SAFETY**, *et al*.,          Consolidated Case Nos. 14-cv-04932-YGR
                                                   and 14-cv-04933-YGR
9                           Plaintiffs,
     and
10                                                 **ORDER ON INTERVENOR-DEFENDANT'S
     **HUMANE SOCIETY OF THE UNITED STATES**,      MOTION TO DISMISS; ORDER TO SHOW
11   *et al*.,                                     CAUSE RE: STAY PENDING EXHAUSTION**

12                           Plaintiffs,

13              v.                                 Re: Dkt. No. 58

14   **MARGARET A. HAMBURG**, Commissioner,
     United States Food and Drug Administration,
15   *et al*.,

16                           Defendants,
     and
17

18   **ELANCO ANIMAL HEALTH**,

19                           Intervenor-Defendant.

20

21            Plaintiffs Center for Food Safety, *et al*., (collectively, "plaintiffs") bring these cases against

22   defendants United States Food and Drug Administration ("FDA") and Margaret Hamburg, in her

23   official capacity as the Commissioner of the FDA (collectively, "defendants"), alleging violations

24   of the National Environmental Protection Act ("NEPA") and the Administrative Procedure Act

25   ("APA").  Plaintiffs seek declaratory and injunctive relief directing the FDA to comply with

26   NEPA and its implementing regulations with respect to approval of ractopamine hydrochloride

27   ("ractopamine") and ractopamine combination animal drugs from 2008 to 2014.  On March 5,

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

2015, the Court consolidated the two cases for all purposes.  (Dkt. No. 32.)[1]  Intervenor-defendant Elanco Animal Health ("Elanco") moved to intervene in both cases, and on April 1, 2015, the Court granted Elanco's motion.  (Dkt. No. 45.)

Pending before the Court is defendant-intervenor Elanco's[2] motion to dismiss the complaints for plaintiffs' failure to exhaust administrative remedies.  (Dkt. No. 58, "Mtn.")  Having carefully considered the papers submitted[3] and the pleadings in this action, oral argument on September 8, 2015, and for the reasons set forth below, the Court hereby **GRANTS** Elanco's motion to dismiss the complaints.

## I.     BACKGROUND

The FDA first approved the use of ractopamine in 1999 for pigs and later approved it for cattle and turkeys.  (Dkt. No. 1, "CFS Compl.," ¶ 36; Dkt. No. 1, 14-cv-4933, "HSUS Compl.," ¶ 34.)  Ractopamine has a number of metabolic effects on animals, including a shift in dietary energy balance "toward skeletal muscle growth as opposed to fat deposition."  (CFS Compl. ¶ 31; HSUS Compl. ¶ 27.)  Elanco manufactures ractopamine, and markets the drug as a "feed additive to induce faster growth and leaner meat in pigs, cattle, and turkeys."  (CFS Compl. ¶ 35; HSUS Compl. ¶ 27.)  Ractopamine is also used in combination with other pharmaceuticals, including tylosin, monensin, and melengestrol.  (CFS Compl. ¶¶ 68-99; HSUS Compl. ¶¶ 73-103.)

Plaintiffs are public interest organizations whose missions include protecting human health and the environment by, for example, "challenging harmful food production technologies and promoting sustainable alternatives."  (CFS Compl. at ¶ 11.)  Additionally, the missions of certain

---

[1] Except where explicitly stated otherwise, and pursuant to the Court's order consolidating the cases, all references to the docket are to the main docket, Case No. 14-cv-4932-YGR.

[2] Defendants originally did not join in Elanco's motion to dismiss.  At the hearing on September 8, 2015, counsel for defendants represented that they believed that some, but not all, of plaintiffs' claims were subject to dismissal for failure to exhaust.  (*See* Dkt. No. 76 at 9-10.)  Defendants later changed their position, now arguing that Elanco's motion should be granted and plaintiffs' claims dismissed entirely.

[3] Following the September 8, 2015 hearing, the parties submitted a series of supplemental briefs in support of their arguments on application of the administrative exhaustion requirement.  (*See* Dkt. Nos. 73-75, 80, 84, 87.)

plaintiffs focus on animal protection and animal health risks (HSUS Compl. at ¶¶ 8, 17), as well as the interests of farmworkers in the United States (*Id.* at ¶ 11).  Plaintiffs bring this consolidated action to challenge the FDA's approval of animal drug applications for animal drugs containing ractopamine.  (CFS Compl. ¶ 1; HSUS Compl. ¶ 1.)  Specifically, plaintiffs allege that that FDA did not comply with the requirements of NEPA[4] with respect to its consideration of impact on the environment when it approved the ractopamine-containing animal drug applications beginning in 2008 (the "FDA approvals").  (CFS Compl. ¶ 120; HSUS Compl. ¶ 119).  Plaintiffs allege that, as a result of FDA's inadequate NEPA review, the FDA approvals were "arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with NEPA…and must be set aside."  (CFS Compl. ¶ 138, 149; HSUS Compl. ¶ 131, 135.)  Plaintiffs therefore request, primarily, that the Court: (i) declare that the FDA approvals violated NEPA and its implementing regulations; and (ii) vacate and remand the FDA approvals to FDA.  (*See* CFS Compl.; HSUS Compl.)  Moreover, the CFS complaint requests that the Court issue a preliminary and permanent injunction "barring the use of ractopamine-based animal drugs until FDA complies with NEPA."  (CFS Compl., Prayer for Relief, ¶ 3.)

Due to statutory and regulatory requirements that applications to FDA for new drugs remain confidential, *see* 21 U.S.C. § 331(j); 21 CFR §§ 514.11, 514.12, plaintiffs only became aware of the approvals, and FDA's associated decision-making, when they were final and published in the Federal Register.  (CFS Compl. ¶ 118, 121; HSUS Compl. ¶ 117, 122.)  Thus, plaintiffs were not able to participate in the administrative process prior to the FDA approvals at issue.  (*Id.*)  Central to defendant-intervenor's motion to dismiss, plaintiffs do not allege that they pursued any administrative remedies with the FDA relating to their NEPA grievances following the FDA approvals.  As discussed more fully below, plaintiffs actually concede the same but contend that either they were not required to do so, or in the alternative, that the Court should

---

[4] The CFS complaint also generally alleges that the FDA's approvals were "without observance of procedures required by the APA," but fails to state the manner in which these violations occurred.  (CFS Compl. ¶¶ 138, 149).  The APA is the statutory mechanism by which plaintiffs seek this Court's review of the FDA's action, and plaintiffs do not separately assert in any sufficient detail that the FDA violated the APA when it approved the drugs at issue.

United States District Court
Northern District of California

1    waive the exhaustion requirement under these circumstances.

2    **II.    DISCUSSION**

3        **A.  Statutory Framework**

4        Congress enacted NEPA in 1969 to protect the environment by requiring federal agencies

5    to follow certain procedural steps before taking any action affecting the environment.  On its own,

6    NEPA "does not provide a private cause of action for violation of its provisions."  *Salmon River*

7    *Concerned Citizens v. Robertson*, 32 F.3d 1346, 1353 n. 13 (9th Cir. 1994).  Thus, plaintiffs

8    correctly proceed under the APA, which does provide a cause of action to parties seeking judicial

9    review of agency NEPA decisions, subject to several limitations.  *See id.*; 5 U.S.C. § 702.

10       Relevant here is the APA's requirement "that plaintiffs exhaust available administrative

11   remedies before bringing their grievances in federal court."  *Idaho Sporting Congress, Inc. v.*

12   *Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002) (citing 5 U.S.C. § 704).  "The purpose of the

13   exhaustion doctrine is to allow the administrative agency in question to exercise its expertise over

14   the subject matter and to permit the agency an opportunity to correct any mistakes that may have

15   occurred during the proceeding, thus avoiding unnecessary or premature judicial intervention into

16   the administrative process."  *Buckingham v. Secretary of U.S. Dept. of Agr.*, 603 F.3d 1073, 1080

17   (9th Cir. 2010) (quoting *United Farm Workers v. Ariz. Agric. Employment Relations Bd.*, 669 F.2d

18   1249, 1253 (9th Cir. 1982)).  The APA requirement that plaintiffs exhaust administrative remedies

19   "applies to claims under NEPA."  *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 965 (9th

20   Cir. 2006); *See Save Strawberry Canyon v. U.S. Dept. of Energy*, 830 F.Supp.2d 737, 745

21   (N.D.Cal. 2011) ("[a] NEPA plaintiff must exhaust administrative remedies before seeking

22   judicial review of the administrative process").

23       The APA does not mandate a particular process by which a plaintiff must exhaust

24   administrative remedies before seeking judicial review in federal court.  Rather, the exhaustion

25   doctrine exists under the APA only "to the extent that it is required by statute or agency rule as a

26   prerequisite to judicial review."  *Darby v. Cisnero*, 509 U.S. 137, 153 (1993).  Although the FDA

27   approval process is relatively closed to the public, the FDA has created a regulatory mechanism by

28   which interested persons may challenge the Commissioner's activities under the Food, Drug, and

United States District Court
Northern District of California

4

Cosmetic Act ("FDCA").  *See* 21 CFR §§ 10.1(a), 10.25(a), 10.45(b).  Namely, 21 CFR section

10.25(a) provides, in pertinent part: "[a]n interested person may petition the Commissioner to

issue, amend or revoke a regulation or order, or to take or refrain from taking any other form of

administrative action….in the form of a citizen petition."  *See Aventis Pharma S.A. v. Amphastar*

*Pharms., Inc.*, 2009 WL 8727693, at *2 (C.D.Cal. Feb. 17, 2009) ("Any person may try to affect

FDA action…The FDA encourages this, maintaining an open invitation to the public to file a

'citizen petition.'").  Not only do the FDA regulations allow an interested person to file a citizen

petition, but they also mandate that any "request that the Commissioner take or refrain from taking

any form of administrative action must first be the subject of a final administrative decision based

on a petition submitted under § 10.25(a)…before any legal action is filed in a court complaining of

the action or failure to act."  21 CFR 10.45(b).

The FDA regulations, therefore, "*require* that a request" be made to the Commissioner

before filing a complaint in court complaining of an administrative action or failure to act.  *Ass'n*

*of Am. Physicians & Surgeons, Inc. v. FDA*, 539 F.Supp.2d 4, 21 (D.D.C. 2008) (emphasis in

original).  Failure to comply with this exhaustion requirement warrants dismissal of a grievance

filed in federal court in the first instance.  *See id.*, *affirmed by* 358 F.App'x 179, 180-81 (D.C. Cir.

2009) (appellants failed to exhaust their administrative remedies where they "filed no such citizen

petition with the FDA"); *Dietary Supplement Coalition, Inc. v. Sullivan*, 796 F.Supp. 441, 446

(D.Or. 1991) (dismissing complaint, in part, because plaintiff failed to exhaust administrative

remedies by filing a citizen petition with the FDA); *IMS Ltd. v. Califano*, 453 F.Supp. 157, 160

(C.D.Cal. 1977) (noting that plaintiffs could have, but chose not to, file a citizen petition as an

avenue to exhaust administrative remedies with the FDA).  The citizen petition requirement

applies to all "administrative proceedings and activities conducted by the [FDA] under the

[FDCA] … and other laws that the Commissioner of Food and Drugs *administers*."  21 CFR §

10.1 (emphasis supplied).

### B.  Analysis

Plaintiffs do not contest that the above-cited FDA regulations generally require an

interested person to file a citizen petition before filing a complaint in federal court compelling the

United States District Court
Northern District of California

1    FDA Commissioner to take administrative action.  Instead, plaintiffs present three arguments why

2    failure to exhaust does not defeat their claims, namely: (1) the FDA's exhaustion requirement

3    found in 21 CFR section 10.45(b) does not apply here because plaintiffs bring claims under

4    NEPA, not the FDCA; (2) should the Court find the exhaustion requirement applicable here,

5    plaintiffs implore the Court to invoke certain statutory and judicially-created exceptions to excuse

6    or waive their failure to exhaust; and (3) regardless, defendants waived their right to raise the

7    exhaustion argument and Elanco does not have standing to pursue it in their stead.  The Court

8    addresses these arguments in turn.

9                **1.   The FDA Exhaustion Requirement Applies To Plaintiffs' Grievances**

10    Plaintiffs first contend that because NEPA and the FDCA are "two entirely distinct

11    statutory mechanisms," the FDA's exhaustion requirement is inapplicable to their claims.  (Dkt.

12    No. 60, "Oppo.," at 3:6.)  In support of this argument, plaintiffs state that the remedies they seek

13    under NEPA and the APA are "*fundamentally different*" than the relief that FDA's citizen petition

14    process could provide them.  (Oppo. at 4:9-10) (emphasis in original).  Even a cursory review of

15    the complaints shows otherwise.

16    A NEPA review "cannot be entirely divorced from some underlying substantive federal

17    decision," in this case, to issue the FDA approvals.  *Portland Audubon Soc. v. Lujan*, 884 F.2d

18    1233, 1239 (9th Cir. 1989) (although NEPA claim was not phrased as a direct challenge to the

19    underlying federal action, the NEPA claim was nonetheless barred by statutory prohibition against

20    challenges to the underlying federal action).  Plaintiffs essentially argue that NEPA challenges are

21    somehow specially exempt from the APA's clear command requiring administrative exhaustion

22    because, in their view, only "[t]he [Counsel on Environmental Quality ("CEQ")] administers

23    NEPA."  (Oppo. at 6:17.)  *Cf. Darby*, 509 U.S. at 147 (the APA "explicitly requires exhaustion of

24    all intra-agency appeals mandated either by statute or by agency rule …").  However, NEPA does

25    not contain its own right of action.

26    A "NEPA plaintiff must exhaust administrative remedies before seeking judicial review of

27    the administrative process."  *Save Strawberry Canyon*, 830 F.Supp.2d at 745; *see Great Basin*

28    *Mine Watch*, 456 F.3d at 965.  Intra-agency administrative exhaustion of NEPA grievances is

1    indisputably required regardless of whether a plaintiff's claims relate to actions taken by the FDA

2    or any other federal agency.  *See Great Basin Mine Watch*, 456 F.3d at 965 (evaluating exhaustion

3    of administrative remedies through agency-specific procedure in connection with a NEPA

4    challenge against the U.S. Department of the Interior); *Pacific Coast Federation of Fishermen's*

5    *Associations v. U.S. Dept. of the Interior*, 996 F.Supp.2d 887 (E.D.Cal. 2014) (same); *AquAlliance*

6    *v. U.S. Bureau of Reclamation*, 2014 WL 3401390 (E.D.Cal. July 11, 2014) (same, with respect to

7    the U.S. Bureau of Reclamation); *Strawberry Canyon*, 830 F.Supp.2d at 745 (same, with respect

8    to the U.S. Department of Energy); *Winnemem Wintu Tribe v. U.S. Dept. of Interior*, 725

9    F.Supp.2d 1119, 1139 (E.D.Cal. 2010) (same, with respect to U.S. Department of Interior); *The*

10   *Lands Council v. Vaught*, 198 F.Supp.2d 1211, 1240-41 (E.D.Wash. 2002) (same, with respect to

11   U.S. Forest Service).

12           The Ninth Circuit has rejected a similar attempt by a plaintiff to evade dismissal by

13   framing claims as NEPA-only challenges proceeding exclusively pursuant to NEPA and the APA.

14   *Turtle Island Restoration Network v. U.S. Dept. of Commerce*, 438 F.3d 937 (9th Cir. 2006).   In

15   *Turtle Island*, a NEPA plaintiff argued that their NEPA claims should be subject to the APA's six

16   year statute of limitation rather than a narrow jurisdictional statute limiting the window for judicial

17   review of such agency regulations.  There, the complaint revealed that the NEPA claims were

18   "directed at the regulations," and that plaintiff could not include NEPA language as a "stand alone

19   challenge to agency action, distinct from the issuance of regulations," purely to take advantage of

20   the APA's more generous catch-all statute of limitation.  *Id*. at 945.  Likewise, plaintiffs here

21   cannot frame their challenges as under NEPA and the APA to evade their obligation to exhaust

22   administrative remedies under the FDCA.  Allowing plaintiffs to ignore the specific exhaustion

23   requirement under the FDCA because they proceed under the APA would make "little sense," as

24   in *Turtle Island*.  *Id*.  The APA plainly incorporates intra-agency exhaustion requirements, and

25   plaintiffs cannot suggest otherwise.

26           Plaintiffs pointed to *Merrell v. Thomas*, 807 F.2d 776, 782 n. 3 (9th Cir. 1986), for the first

27   time at the hearing, for the proposition that exhaustion under an agency's rules is not required as a

28   prerequisite to judicial review of a NEPA challenge.  In *Merrell*, plaintiffs sought to enjoin the

1    Environmental Protection Agency ("EPA") from registering herbicides under the Federal

2    Insecticide, Fungicide, and Rodenticide Act ("FIFRA") without first complying with NEPA.  The

3    Ninth Circuit ultimately held that EPA was never obligated to comply with NEPA when it

4    registered pesticides under FIFRA.  *Id.* at 781.  Specifically, plaintiffs here rely on a footnote in

5    which the Ninth Circuit noted it reached the merits because it did "not hold that [plaintiff's]

6    conduct amounted to a failure to exhaust administrative remedies" as required under the APA.  *Id.*

7    at 782, n.3.  As an initial matter, *Merrell* was decided before the Supreme Court made clear in

8    *Darby* that exhaustion, "to the extent that it is required by statute or agency rule as a prerequisite

9    to judicial review," under section 702 of the APA.  *Darby*, 509 U.S. at 153.  Moreover, *Merrell*

10   involved a purely legal question, *i.e.*, whether the EPA must engage in a NEPA analysis when

11   registering a pesticide under FIFRA.  The issue here is whether the FDA properly engaged in the

12   NEPA analysis, which requires inquiry into the facts developed in the administrative record – a

13   record the FDA has not fully developed in the absence of plaintiffs' participation in a citizen

14   petition process.  The question is not whether the FDA should be forced to engage in NEPA

15   analyses with respect to drug approvals in the future.  Rather, it is whether the FDA's NEPA

16   analysis was deficient in particular instances, and if so, whether the FDA approvals should be

17   withdrawn or vacated.  *See Merrell*, 807 F.2d, 782 n.3 ("[i]f [plaintiff] had sued to cancel or

18   suspend pesticide registrations, [a holding that plaintiff failed to exhaust] might be appropriate").

19   For all of these reasons, the Court finds that *Merrell* does not control.

20        Plaintiffs further contend that the FDA regulatory scheme containing the citizen petition

21   requirement is inapplicable because it only applies to actions of the Commissioner undertaken

22   with respect to statutes the FDA "administers."  21 CFR § 10.1.  In that regard, plaintiffs contend

23   that the FDA does not administer NEPA (or the APA) and so the claims in their complaints do not

24   fall within the citizen petition requirement in 21 CFR section 10.45(b).  In plaintiffs' view, FDA

25   (like all federal agencies) merely complies with NEPA, and does not administer it under the

26   meaning of the rule.  While plaintiff's premise – that all federal agencies are entrusted to comply

27   with NEPA – is correct, it does not follow that federal agencies are not also administering NEPA

28   in order to achieve compliance.  *See Grand Canyon Trust v. Federal Aviation Admin.*, 290 F.3d

United States District Court
Northern District of California

United States District Court
Northern District of California

1   339, 341 (D.C. Cir. 2002) ("NEPA is addressed to all federal agencies and Congress did not

2   entrust administration of NEPA to [one federal agency] *alone*") (emphasis supplied).  Indeed,

3   plaintiffs ask this Court to order the FDA to comply with the statutory structure set forth in NEPA,

4   necessarily requiring FDA to administer NEPA in some measure.

5          Plaintiffs draw an analogy between the FDA's obligations under NEPA and its obligations

6   under the Freedom of Information Act ("FOIA"), to the extent that the FDA must comply with,

7   but does not exclusively administer, both NEPA and FOIA.  Because FDA does not require the

8   citizen petition process be followed for FOIA grievances against FDA, plaintiffs claim it should

9   similarly not apply to NEPA claims.  But plaintiffs overlook an important difference between

10  FOIA and NEPA.  Namely, FOIA contains its own private right of action and prescribes its own

11  administrative procedures for administrative review and judicial remedies.  5 U.S.C. § 552(a).

12  NEPA, by contrast, does not.  As discussed above, a plaintiff's exclusive right to judicial review

13  of an agency's NEPA procedures is under the APA, and only if a plaintiff has satisfied the

14  agency's statutory or regulatory exhaustion requirements.  5 U.S.C. §§ 702, 704.  Thus, plaintiffs'

15  FOIA analogy is flawed.[5]

16         Accordingly, the Court concludes that plaintiffs' NEPA challenges are subject to the

17  regulatory requirement that a citizen petition be filed with the FDA, and the FDA must respond

18  thereto, before plaintiffs are entitled to file to a claim in federal court.

19                    **2.  No Exceptions To The Exhaustion Requirement Apply Here**

20         In the alternative, plaintiffs contend that the Court should excuse compliance with any

21  applicable exhaustion requirement.  The Court addresses plaintiffs' arguments in turn below.

22  \\\

23  _____

24         [5] Plaintiffs' reliance on cases involving the Endangered Species Act ("ESA") for the
    proposition that the FDA's citizen petition process does not apply is similarly flawed.  *See, e.g.,*
25  *Coal. for a Sustainable Delta v. FEMA*, 812 F.Supp.2d 1089, 1130 (E.D.Cal. 2011) ("[National
    Flood Insurance Act's (NFIA)] administrative review procedures reveal no legislative intent to
26  require exhaustion of the NFIA's procedures prior to an ESA challenge").  As the court recognized
    in *Coalition for a Sustainable Delta*, the ESA, unlike NEPA, authorizes its own private right of
27  action and does not itself require exhaustion.  *Id.* at 1105, 1129.  Thus, judicial review of
    compliance with the ESA does not implicate the APA's mandate that plaintiffs first exhaust
28  administrative remedies provided by statute and regulation.

9

**a.   The "Inoperative" Exception in 5 U.S.C. § 704 Does Not Apply**

First, plaintiffs argue that the FDA's exhaustion requirement should not apply because a citizen petition would not render the challenged FDA approvals "inoperative."  Plaintiffs rely on language in APA's section 704, and the Supreme Court's interpretive statements in *Darby*, 509 U.S. at 154, in support of their argument that exhaustion is not required where the administrative process would not render the FDA approvals "inoperative."  Section 704 provides in pertinent part:

> …agency action otherwise final is final for the purposes of this section…unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

As Elanco properly states in reply, *Darby* does not validate plaintiffs' position.  The Supreme Court made clear in *Darby* that the "inoperative" exception applies only to *optional* administrative remedies, and section 704 otherwise requires exhaustion of administrative remedies that a "statute or rule clearly mandates."  *Darby*, 509 U.S. at 146; *see Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408 (9th Cir. 1996) ("*Darby* held that a person aggrieved by an agency decision is not required to exhaust *nonmandatory* administrative remedies…before seeking judicial review") (emphasis supplied).  Because FDA's citizen petition requirement is mandatory, the "inoperative" exception in section 704 is inapplicable.[6]  *See* 21 CFR 10.45(b).

**b.   Plaintiffs Have a Meaningful Opportunity to Participate**

Next, plaintiffs contend that they should not be required to exhaust because they have not been provided a meaningful opportunity to participate in the administrative process.  Plaintiffs principally rely on a decision from the District of Colorado for this proposition.  *See Dine Citizens Against Ruining Our Env't v. Klein*, 676 F.Supp.2d 1198, 1211 (D. Colo. 2009).  In *Dine Citizens*, the court concluded that the plaintiffs' NEPA claims were not subject to dismissal on a Rule

---

[6] The Court also notes that the limitations in section 704 could not excuse plaintiffs' failure to exhaust because the citizen petition is not an "appeal to superior agency authority."  5 U.S.C. § 704.  It is undisputed that plaintiffs have never raised their NEPA claims to any FDA authority.  Because section 704 is inapplicable, the Court need not reach whether plaintiffs have an appropriate mechanism to render the FDA approvals "inoperable" pending the citizen petition.

United States District Court
Northern District of California

1    12(b)(6) motion despite their failure to exhaust these claims before filing suit based on plaintiffs'

2    allegations in their complaint that the agency had "an ongoing pattern and practice of violating

3    NEPA and NEPA's implementing regulations by failing to provide adequate notice to the public

4    of [the agency]'s NEPA process…and by failing to provide a meaningful opportunity for the

5    public to participate in this process." *Id.* If proved, the court reasoned that these allegations

6    "would excuse [p]laintiffs' failure to challenge [the agency's] NEPA compliance before the

7    agency prior to bringing this action." *Id.* Plaintiffs' reliance on *Dine Citizens* is misplaced.

8    There, the court initially held that the Department of the Interior, Office of Surface Mining

9    Reclamation and Enforcement's implementing statute and regulations did not contain any

10   mandatory exhaustion requirements such that the APA would require exhaustion. *Id.* at 1208-09.

11   By contrast, here, the FDA's regulations mandate interested persons, such as plaintiffs, to file a

12   citizen petition before filing a court action. 21 CFR 10.45(b).

13          Moreover, plaintiffs' premise that they have not been provided a meaningful opportunity to

14   participate in the administrative process is not sound. The FDA citizen petition regulations

15   provide plaintiffs with the opportunity to raise their NEPA concerns with the agency. The Court is

16   unconvinced by plaintiffs' claim that "NEPA does not demand such participation." (Oppo. at

17   16:7-8.) Again, whether NEPA contains a separate exhaustion requirement is not the relevant

18   inquiry. Plaintiffs' arguments to the contrary are misguided. The APA allows plaintiffs to file a

19   lawsuit to challenge the decision of a federal agency only after they exhaust administrative

20   remedies. *Idaho Sporting Congress*, 305 F.3d at 965; 5 U.S.C. § 704. Plaintiffs are not entitled to

21   bypass the FDA's citizen petition process simply because they frame their challenges as under

22   NEPA and the APA. The FDA citizen petition process grants plaintiffs a meaningful opportunity

23   to comment on the FDA approvals, and allows the FDA an opportunity to correct any mistakes it

24   made in the approval process prior to possible judicial intervention. *See id.* ("[t]he rationale

25   underlying the exhaustion requirement is to avoid premature claims and to ensure that the agency

26   possessed of the most expertise in an area be given first shot at resolving a claimant's

27   difficulties"). To hold otherwise would circumvent the statutory structure in place. Here, plaintiffs

28   have failed to comply therewith.

United States District Court
Northern District of California

### c.  Plaintiffs' Individual Interests Cannot Excuse Exhaustion

Finally, plaintiffs implore the Court to exercise its sound discretion and not require exhaustion.  *See McCarthy v. Madigan*, 503 U.S. 140, 144-49 (1992).  In *McCarthy*, the Supreme Court recognized three "broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Id.* at 146.  Elanco responds that the Supreme Court's holding in *Darby* – that exhaustion is an element of an APA claim for judicial review – erased courts' discretion in APA cases to excuse failure to exhaust based on judicially-created exceptions.  Specifically, where a statute or regulation mandates exhaustion, Elanco argues that exhaustion is no longer subject to judicial discretion post-*Darby*.  Plaintiffs are only able to cite a single APA case post-*Darby* where a court waived an exhaustion requirement.  *See Bracco Diagnostics, Inc. v. Shalala*, 963 F.Supp. 20, 31 (D.D.C. 1997) (declining to require exhaustion on a preliminary injunction based on a showing of irreparable harm if plaintiffs were forced to engage in the administrative process).  The Court does not read *Bracco Diagnostics* to endorse plaintiffs' view, especially considering the decision does not address the implications of *Darby*.  Rather, the more reasonable interpretation is that the court unfortunately overlooked *Darby*'s command that administrative remedies created by regulation and statute must be exhausted.  By contrast, several circuit and district courts have considered *Darby* and its progeny in this context and concluded that courts no longer have discretion to excuse failure to exhaust mandatory administrative remedies in APA cases.  *See, e.g. Shawnee Trail Conservancy v. U.S. Dept. of Agric.*, 222 F.3d 383, 389 (7th Cir. 2000) (noting that a district court does not have "the power to waive the statutorily-mandated exhaustion requirement of the APA"); *Volvo GM Heavy Truck Corp. v. U.S. Dept. of Labor*, 118 F.3d 205, 212 (4th Cir. 1997) (noting that plaintiffs were unable to "point[] to any case, *involving a challenge under the APA*, since *Darby*, that has subjected the exhaustion requirement to judicial discretion") (emphasis in original); *Conservation Force v. Salazar*, 919 F.Supp.2d 85, 90-91 (D.D.C. 2013) (holding that regulatory exhaustion clauses could not be waived or excused).  The Court finds the reasoning in these cases persuasive and concludes it cannot waive the exhaustion requirement here.

\\\

12

1    Even if the citizen suit requirement were subject to judicial waiver, the Court would

2    decline to excuse plaintiffs' failure to exhaust in this case.  Plaintiffs argue that all three

3    circumstances discussed by the Supreme Court in *McCarthy* are present here, namely that: (1)

4    requiring the administrative remedy would result in undue prejudice to them later bringing a court

5    action; (2) the FDA is not empowered to grant effective relief through the administrative process;

6    and (3) exhaustion would be futile because the FDA is biased or has otherwise predetermined the

7    issue.  *Id.* at 146-49.  The Court examines each:

8    First, plaintiffs contend that the citizen petition process would unduly prejudice them

9    because they will "suffer irreparable harm" if the Court does not immediately consider their

10   claims.  (Oppo. at 12:24-25) (quoting *McCarthy*, 503 U.S. at 147).  In plaintiffs' view, the citizen

11   petition process does not guarantee a substantive response from the FDA, much less within a

12   reasonable timeframe.  The FDA regulations require a tentative response to a citizen petition be

13   sent within 180 days, but do not mandate a time frame for a final response from the agency.  *See*

14   21 CFR § 10.30(e)(2).  Yet, by plaintiffs' own admission, they have an available remedy – proven

15   successful – to ensure the FDA provides a final response in a timely manner: filing suit.  *See* 5

16   U.S.C. § 706(1).  The Court likewise finds plaintiffs' reliance on the FDA's delays in responding

17   to unrelated citizen petitions unpersuasive because plaintiffs have not shown that FDA would

18   unduly delay its response to *this* (hitherto unfiled) citizen petition raising NEPA concerns.

19   Further, even if plaintiffs had shown delay, they must also make a showing of resulting injustice.

20   *See McCarthy*, 503 U.S. at 147.  The Court does not find plaintiffs' claims of injustice compelling

21   given that they waited until November 2014 to file these lawsuits challenging FDA approvals

22   issued beginning in 2008.

23   Second, plaintiffs argue that the citizen petition process would be ineffective because it

24   cannot result in the remedies they seek.  Plaintiffs claim that any "after-the-fact" NEPA review the

25   FDA performs as a result of a citizen petition would be inadequate.  (Oppo. at 22:7-10.)  This

26   Court's review, however, would be similarly limited.  Judicial review at this juncture would be

27   even more limited to the extent that the FDA has not yet developed an administrative record,

28   utilizing its specialized expertise, addressing plaintiffs' concerns.  The FDA citizen petition

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1    process is the appropriate procedural mechanism for plaintiffs to raise its contentions in the first

2    instance, before seeking judicial review.   In response, the agency may withdraw/vacate the FDA

3    approvals – the remedy sought by plaintiffs – should it conclude that new evidence or changed

4    circumstances require new NEPA review.  *See* 21 U.S.C. § 360b(e)(1).  Plaintiffs' argument that

5    the FDA cannot provide effective relief fails.

6         Lastly, with respect to whether "pursuit of administrative remedies would be a futile

7    gesture," plaintiffs contend that the futility exception applies because the FDA is biased and has

8    predetermined the result.  *Dietary Supplemental Coalition, Inc. v. Sullivan*, 978 F.2d 560, 564 (9th

9    Cir. 1992) (internal quotations omitted); *see McCarthy*, 503 U.S. at 148.  In support thereof,

10   plaintiffs point to a document they claim shows the "bias and the predetermined nature of [FDA's]

11   decision making process in the Administrative Record."  (Oppo. at 19:8-9) (citing Dkt. No. 25,

12   Administrative Record at FDA_002420.)  The Court recognizes the troubling nature of this

13   document, which states:

14
15        The Office of New Animal Drug Evaluation (ONADE) policy
         stipulates that EAs will not be required for Animal Drug Availability
16        Act (ADAA) combinations regardless of whether extraordinary
         circumstances exist, as long as the sponsor claims a categorical
17        exclusion, cites the correct CFR code, and states that to their
         knowledge no extraordinary circumstances exist.

18   (Dkt. No. 25.)  At this juncture, the Court does not have a sufficient record in front of it to

19   determine whether any dereliction of duty has occurred and will not speculate on same.  Plaintiffs

20   have not made a showing that the FDA letter constitutes a final position, or that the FDA has

21   predetermined that it will not engage in further NEPA analysis where a citizen petition

22   demonstrates that doing so is appropriate.  Accordingly, the Court remains convinced that the

23   prudent course requires it to allow the FDA its opportunity to resolve plaintiffs' grievances

24   administratively.  *See Idaho Sporting Congress*, 305 F.3d at 965 ("[t]he rationale underlying the

25   exhaustion requirement is to avoid premature claims and to ensure that the agency possessed of

26   the most expertise in an area be given first shot at resolving a claimant's difficulties").

27         For these reasons, the Court finds it inappropriate to relieve plaintiffs of their obligation to

28   exhaust administrative remedies with the FDA before seeking judicial review.

**C.  The Exhaustion Requirement Was Not Waived By FDA**

In response to FDA's late joinder in Elanco's motion, plaintiffs argue that the FDA waived its right to challenge plaintiffs' claims based on failure to exhaust.  Specifically, plaintiffs argue that FDA violated 21 CFR section 10.45(b) because it did not move to dismiss in the first instance. Section 10.45(b) provides in pertinent part:

> If a court action is filed complaining of the action or failure to act before the submission of the decision on a petition under § 10.25(a) or, where applicable, a hearing under § 16.1(b), the Commissioner shall request dismissal of the court action or referral to the agency for an initial administrative determination on the grounds of a failure to exhaust administrative remedies, the lack of final agency action as required by 5 U.S.C. 701 et seq., and the lack of an actual controversy as required by 28 U.S.C. 2201.

According to plaintiffs, "[a]llowing FDA to ignore its own regulations as a means of arguing that Plaintiffs ignored FDA regulations would lead to an illogical and erroneous result."  (Dkt. No. 80 at 4:15-17.)  The Court does not agree.  FDA's regulations do not require that it seek *immediate* dismissal to preserve an exhaustion defense, as plaintiffs argue.  While FDA's decision not to raise plaintiffs' failure to exhaust on a motion to dismiss frustrated the efficiency of this motion practice, it hardly constituted waiver.  FDA preserved its right to raise exhaustion as an affirmative defense by including it in its answers to the complaints.  (*See* Dkt. Nos. 38, 59.)

Likewise, the Court does not agree with plaintiffs' position that FDA must file its own motion to dismiss because Elanco lacks Article III standing to raise exhaustion alone.  As discussed above, *Darby* established that exhaustion is an element of the cause of action under the APA.  Plaintiffs have not articulated why Elanco must suffer injury arising out of plaintiffs' failure to exhaust in order to argue that plaintiffs have failed to plead a necessary element of their cause of action.  The Court cannot discern any bar to Elanco bringing this motion, especially in light of FDA's (albeit tardy) agreement that plaintiffs must exhaust.

**III.    LEAVE TO AMEND**

Leave to amend is liberally granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chodos v. West Pub. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).  One exception to this general rule of

United States District Court
Northern District of California

permissiveness, however, is where amendment would be futile. *Foman*, 371 U.S. at 182; *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004). The Court finds that it would be futile to grant leave to amend here because plaintiffs' claims cannot proceed until they exhaust their administrative remedies with the FDA.

### IV. CONCLUSION

Plaintiffs failed to exhaust their NEPA challenges pursuant to the APA, 5 U.S.C. section 704, and therefore may not yet bring this action in this Court. The Court **GRANTS** Intervenor Elanco's motion to dismiss.

Although the Court finds that plaintiffs cannot prosecute their claims at this juncture, a stay pending exhaustion (including periodic reviews) would allow the Court to monitor the progress of administrative review. Accordingly, the parties are hereby **ORDERED TO SHOW CAUSE** why the Court should not stay the case pending exhaustion. The parties shall meet and confer and file a JOINT STATEMENT on their positions regarding a stay within fourteen (14) days of the date of this Order.

This Order terminates Dkt. No. 58.

**IT IS SO ORDERED.**

Dated: November 5, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California